**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANA PALOMARES, JAIME CAMARENA, FLORINDA MUNOZ, SILVIA ROSALES, LILIANA SERRANO, JOSEPHINE SANCHEZ, and GILBERT SANCHEZ, | )<br>)<br>)<br>)<br>)<br>) | Case No. 10-cv-6124<br><br>Judge Sharon Johnson Coleman |
| Plaintiffs, | )<br>) | Magistrate Judge Jeffrey Cole |
| v. | )<br>)<br>) | |
| SECOND FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO D/B/A SECOND FEDERAL SAVINGS, | )<br>)<br>)<br>) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on motions by Plaintiffs Jaime Camarena, Florinda Munoz, Ana Palomares, Silvia Rosales, Liliana Serrano, Josephine Sanchez, and Gilbert Sanchez (collectively the "Plaintiffs") to strike certain affirmative defenses asserted by Defendant Second Federal Savings and Loan Association of Chicago ("Second Federal") pursuant to Federal Rule of Civil Procedure 12(f). For the reasons that follow, the Court grants Plaintiffs' motions in part and denies them in part.

## FACTS

On September 24, 2010, Plaintiffs filed separate complaints each alleging they were subjected to various discriminatory employment practices by Second Federal.[1] Plaintiffs are all of Latino descent and were among twenty employees terminated by Second Federal on September 8, 2009. Sixteen of the twenty terminated employees were of Latino descent. The terminated employees who met the definition of "Executive Management" were entitled to

---
[1] The same counsel represents each of the seven individual Plaintiffs.

receive between eight and twenty-six weeks of severance compensation depending upon their length of employment. Those employees who did not meet this definition were entitled to receive between two to four weeks of severance pay. The four non-Latinos were the only terminated employees who met the definition of "Executive Management."

Plaintiffs filed separate actions alleging, *inter alia*, that Second Federal's definition of "Executive Management" had a disparate impact on Latino employees and was specifically designed to limit the severance compensation of Latino employees. Certain Plaintiffs also alleged they were wrongfully discharged in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") or the Age Discrimination in Employment Act of 1976 ("ADEA"). The Court consolidated the seven actions on September 8, 2009. Plaintiffs now move to dismiss certain of Second Federal's affirmative defenses claiming they are either basic denials of allegations contained in the Complaint or fail to comply with the pleading requirements under Federal Rule of Procedure 8(a).

## STANDARD OF REVIEW

A district court may strike an insufficient affirmative defense pursuant to Rule 12(f). *Heller Fin'l Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). A motion under Rule 12(f) must be filed "within 21 day after being served with the pleading" and allows a court to strike any "redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Affirmative defenses are pleadings and, therefore, are subject to all of the pleading requirements of the Federal Rules of Civil Procedure. *Heller*, 883 F.2d at 1294. Thus, affirmative defenses must assert a "short and plain statement" of the defense as required by Rule 8(a). *Id.* Affirmative defenses must also contain sufficient factual matter, accepted as true, to state an affirmative defense to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct.

1937, 1939, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 156 L. Ed. 2d 929 (2007)). The basic concept of an affirmative defense is an admission of the facts alleged in the complaint, coupled with the assertion of some other reason that the defendant is not liable. *See, e.g., Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 736 (N.D. Ill. 1982). Conclusory, vague, and unsupported affirmative defenses that do not meet the requirements imposed by Rule 8(a) are legally insufficient. *Heller*, 883 F.2d 1294-95. For further guidance, courts in this district employ a three-part test to examine the sufficiency of an affirmative defense to determine whether: (1) the matter is properly pled; (2) the defense complies with Rule 8; and (3) the defense withstands a Rule 12(b)(6) challenge. *Bobbitt*, 532 F. Supp. at 737.

As a general rule, motions to strike affirmative defenses are disfavored because of their tendency to delay the proceedings. *Heller*, 883 F.3d at 1294. Such motions will only be granted where they remove unnecessary clutter from the case or where the affirmative defense is insufficient on the face of the pleadings. *Id.* Even where a motion to strike is granted, leave to amend the pleading is to be freely granted as justice requires. FED. R. CIV. P. 15(a). Additionally, striking an affirmative defense does not necessarily preclude the party from asserting or arguing its substantive merits later in the case. *Instituto Nacional De Comerializacion Agricola (Indeca) v. Cont'l Ill. Nat'l Bank & Trust Co.*, 576 F. Supp. 985, 988 (N.D. Ill. 1983).

## DISCUSSION

On March 11, 2011, Second Federal filed separate answers and affirmative defenses to each of the seven actions consolidated before this Court.[2] (Dkt. Nos. 43-49.) Second Federal asserted the same nine affirmative defenses with each answer. Plaintiffs filed separate motions

---
[2] Second Federal referred to its affirmative defenses in each action as "Additional Defenses."

on behalf of each Plaintiff for leave to strike eight of the nine affirmative defenses on April 4, 2010. (Dkt. No. 52.) While Plaintiffs' motions exceeds the 21 day limit under Rule 12(f), Plaintiffs notified the Court and Second Federal of their intention to file the instant motions in the parties' joint status report filed on March 29, 2011. (Dkt. No. 50. p. 9.) The Court grants the Plaintiffs leave to file the motions and turns now to consider the merits of each motion.

Plaintiffs argue that certain affirmative defenses are merely denials of the Complaint allegations and that others lack the factual support required by Rule 8(a). In response, Second Federal contends that its affirmative defenses are properly pled. Second Federal further argues that Plaintiffs' motion to strike has little purpose or point as Second Federal intends to raise these defenses as appropriate whether they are stricken or not.

**AFFIRMATIVE DEFENSE 1**

In affirmative defense number 1, Second Federal alleges each Plaintiff failed to state a claim because Second Federal discharged each of them for nondiscriminatory reasons. Plaintiffs allege this affirmative defense should be stricken because it is a pure denial of the Complaint allegations. Although issues raised by denial are not proper affirmative defenses, the defense may stand where the matter is not clear. *Indeca*, 576 F. Supp. at 989. All of the Plaintiffs, with the exception of Jaime Camarena ("Camarena") and Liliana Serrano ("Serrano"), allege that they were wrongfully discharged in violation of either Title VII or the ADEA. Since Camarena and Serrano did not allege wrongful discharge, the Court finds that affirmative defense 1 is immaterial to the claims asserted in their complaints. Therefore, the Court grants Plaintiffs' motions to strike affirmative defense number 1 asserted on behalf of Camarena and Serrano.

The wrongful discharge allegations asserted on behalf of Plaintiffs Ana Palomares ("Palomares"), Florinda Munoz ("Munoz"), Silvia Rosales ("Rosales"), Josephine Sanchez ("J. Sanchez"), and Gilbert Sanchez ("G. Sanchez") use similar language and essentially assert that:

> As a result of SECOND FEDERAL's policies and practices [Plaintiff] was unjustly deprived of an equal employment opportunity because of [his or her protected status]. (Palomares Compl. ¶¶ 50, 65, 74, 84; Munoz Compl. ¶¶ 48, 89; Rosales Compl. ¶¶ 50, 64; J. Sanchez Compl. ¶¶ 47, 63; G. Sanchez Compl. ¶ 47.)

Second Federal denied each of these allegations. Affirmative defense 1, however, goes beyond denying that these Plaintiffs were deprived of an equal employment opportunity and asserts that each Plaintiff was discharged for non-discriminatory reasons. The Court finds this affirmative defense provides Plaintiffs with sufficient notice of the basis for the defense and is neither redundant nor immaterial. Thus, the Court denies Plaintiffs' motions to strike affirmative defense number 1 with respect to Palomares, Munoz, Rosales, J. Sanchez, and G. Sanchez.

**AFFIRMATIVE DEFENSE 2**

In affirmative defense 2, Second Federal alleges that the Plaintiffs' claims for monetary relief are barred to the extent that the Plaintiffs failed to mitigate their damages. Second Federal provides no factual support for this defense to explain what steps Plaintiffs could have taken to mitigate their damages. Nor has Second Federal established that Plaintiffs had a duty to mitigate their damages. The second affirmative defense is merely a bare bones conclusory allegation that does not meet the pleading requirements of Rule 8(a). The Court hereby strikes this deficient defense.

**AFFIRMATIVE DEFENSE 3**

Affirmative defense 3 asserts that Plaintiffs may not recover for any act occurring more than 300 days prior to the date Plaintiffs filed their EEOC charge. Plaintiffs argue that this affirmative defense raises a defense to a hypothetical claim and thus should be stricken. Yet the

federal rules allow such hypothetical pleading. FED. R. CIV. P. 8(d)(2) ("[a] party may set out 2 or more statements of a claim or a defense alternatively or hypothetically"). Plaintiffs also argue that this defense is a legal conclusion and lacks factual allegations to put Plaintiffs on notice of which claims are subject to this defense. The Court disagrees. In Illinois, a plaintiff must file an EEOC charge within 300 days of an alleged unlawful employment practice and any prior occurring events are outside of the scope of an action brought pursuant to that EEOC charge. *Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 707 (7th Cir. 1995). Each Plaintiff filed an EEOC charge, received an EEOC Notice of Right to Sue letter ("Notice"), and attached the Notice to each complaint. The Notice details Second Federal's alleged discriminatory conduct and the date each charge was filed. As Second Federal notes in its opposition, Plaintiffs may disclose events during discovery beyond those identified in the EEOC charges. This affirmative defense puts Plaintiffs on notice that Second Federal is not liable for any events outside of the scope of the EEOC charges. The factual predicate for this defense is found in each complaint and in the Notice that accompanies it. The Court finds this affirmative defense is adequately pled and denies Plaintiffs' motions to strike it.

**AFFIRMATIVE DEFENSE 4**

Second Federal alleges in affirmative defense 4 that the Plaintiffs' claims are barred to the extent they are not like or reasonably related to the EEOC charges. Plaintiffs once again argue that this affirmative defense is flawed because it raises a defense to a hypothetical claim and lacks sufficient factual allegations. As discussed above, hypothetical pleadings are permissible under the federal rules. Likewise, the factual support for this defense is contained within the complaint and the attached EEOC Notice. Moreover, in accordance with Seventh Circuit precedent, claims brought pursuant to Title VII are only cognizable where a reasonable

relationship exists between the allegations in the EEOC charge and the claims in the complaint or where the claims in the complaint can reasonably be expected to grow out of an EEOC investigation into the charge. *See, e.g., Cheek v. Western and Southern Life Insur. Co.,* 31 F.3d 497, 500 (7th Cir. 1994). This defense provides Plaintiffs with notice that Second Federal is not liable for any acts unrelated to Plaintiffs' EEOC charges. The Court finds that affirmative defense 4 is plausible and sufficiently pled. Accordingly, the Court denies Plaintiffs' motions to strike this affirmative defense.

**AFFIRMATIVE DEFENSE 5**

Second Federal alleges in affirmative defense 5 that all acts it took against Plaintiffs were taken in good faith and were unrelated to the Plaintiffs' national origin, ancestry, age, and gender. Plaintiffs move to strike this defense as a basic denial of the allegations contained in each complaint. This defense is conclusory and does not provide Plaintiffs with notice of which claim the defense is challenging. Affirmative defense 5 does not meet the federal pleading requirements and thus this Court grants Plaintiffs' motions to strike it.

**AFFIRMATIVE DEFENSE 6**

In affirmative defense 6, Second Federal claims that Plaintiffs are not entitled to punitive damages because no Second Federal supervisor or manager acted with malice or reckless disregard. Plaintiffs challenge this defense as an improper denial of the allegations in each complaint. As an initial matter, the Court notes that Title VII limits punitive damages to cases where intentional discrimination is alleged and thus they are not available in disparate impact cases. *See, e.g., Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 533-34, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999). As a result, this defense is immaterial to Camarena and Serrano's complaints as

these Plaintiffs have only asserted disparate impact claims. The Court hereby grants Plaintiffs' motions to strike affirmative defense 6 with respect to Camarena and Serrano.

As to the remaining Plaintiffs who have asserted discriminatory discharge claims, punitive damages are available to them where specific circumstances are shown to exist. *Kolstad* held that Title VII only authorizes an award of punitive damages when a plaintiff demonstrates that the defendant engaged in intentional discrimination with malice or reckless indifference to an individual's federally protected rights. *Id.* at 529-530. The Seventh Circuit applies a three-part framework for determining whether an award of punitive damages is proper which requires a plaintiff to demonstrate that: (1) the employer knows of the anti-discrimination laws; (2) the discriminators acted with managerial authority; and (3) the employer failed to act with good faith to comply with the requirements of Title VII. *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 857-58 (7th Cir. 2001). Affirmative defense 6 challenges Plaintiffs' ability to meet the second and third prong of the *Bruso* framework and is sufficiently pled. The Court denies Plaintiffs' requests to strike affirmative defense 6 with respect to Palomares, Munoz, Rosales, J. Sanchez, and G. Sanchez.

**AFFIRMATIVE DEFENSE 8[3]**

Affirmative defense 8 alleges that Plaintiffs' claims are barred to the extent that Second Federal reasonably relied upon a bona fide seniority or merit system within its employee benefit plan. Plaintiffs argue that this defense is a denial of the allegations set forth in each complaint and is an incorrect statement of the law. A defendant facing a claim of disparate impact discrimination can rebut the claim by showing that the challenged policy is "reasonable, justified, and consistent with professional standards." *Bew v. City of Chi.*, 252 F.3d 891, 894 (7th Cir. 2001). Drawing all reasonable inferences in Second Federal's favor as the non-movant

---

[3] Plaintiffs did not request that affirmative defense 7 be stricken. (Dkt. No. 52 ¶ 5.)

here, affirmative defense 8 appears to allege that Second Federal's severance plan is reasonably based upon a legitimate seniority system. While Second Federal could have engaged in more artful pleading, the Court finds this defense plausible. Accordingly, Plaintiffs' motions to strike affirmative defense 8 is denied.

**AFFIRMATIVE DEFENSE 9**

Affirmative defense 9 alleges that Plaintiffs' claims are barred for failure to exhaust administrative remedies. Each complaint contains several allegations in a section titled "Administrative Prerequisites" that sets forth the actions taken by the Plaintiffs to comply with the administrative steps necessary to file a civil action pursuant to Title VII and/or the ADEA. When Second Federal answered each complaint it admitted most of the allegations found in the "Administrative Prerequisites" section. Plaintiffs move to strike affirmative defense 9 on the ground that it is a basic denial of the allegations in each complaint and that it is also conflicts with Second Federal's answers. On its face, affirmative defense 9 is inconsistent with Second Federal's answers that Plaintiffs did satisfy the requirements necessary to file the cases at bar. In response, Second Federal argues that this defense is not directed at the administrative remedies required under Title VII but instead is directed at the administrative remedies required under Second Federal's 2009 Severance Plan ("severance plan"). Second Federal's position that Plaintiffs were required to exhaust administrative remedies under the severance plan was not made clear until Second Federal filed its opposition motion. This argument comes too late as it is axiomatic that an argument presented in a brief cannot cure a pleading deficiency. *See, e.g., Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989). Affirmative defense 9 does not provide proper notice of Second Federal's claim that Plaintiffs did not exhaust administrative

remedies under the severance plan. This defense is inadequately pled and the Court grants Plaintiffs' motions to strike it.

## **CONCLUSION**

For the foregoing reasons, the Court grants Plaintiffs' motions to strike affirmative defenses 1 and 6 only as to Plaintiffs Camarena and Serrano without prejudice. The Court also grants Plaintiffs' motions to strike affirmative defenses 2, 5, and 9 without prejudice. The Court denies Plaintiffs' motions to strike the remaining affirmative defenses. In striking many of Second Federal's affirmative defenses, this Court notes that Second Federal is free to cure any technical deficiencies by amending its answer to allege additional facts.

**IT IS SO ORDERED.**

Dated: May 25, 2011

Hon. Sharon Johnson Coleman
United States District Court